November 23, 1967, Footage provided by the student. When you're ready, Mr. Fidel. Thank you. Good morning. May I please the court? I'm Eugene Fidel, representing Dr. Evelyn Lewis. For the reasons set forth in our brief, I think I would like to focus this morning on the licensing issue. Obviously, I'd be happy to respond to any questions the panel may have, although I know that the two members of the panel participated in DICART. Why doesn't that control this? Well, DICART controls the DICART issue, but there is another dimension to the case, which is whether the Board for Correction of Naval Records correctly— whether their decision withstands the usual standards for judicial review, which it doesn't. So that's what I'd like to focus on. But you're saying they made a legal error. You're saying they made a legal error. A judge like that is exactly right, and the error means that Dr. Lewis never obtained a meaningful ruling with respect to the question of what relief she may be entitled to. We're not asking the court to invade the province of the Board for Correction of Naval Records or the secretary of the province, but we do believe that she is entitled to an intelligent ruling based on a correct understanding of what the governing legal principles are under Section 1094 of the licensing statute. Doesn't the president have complete discretion to remove Dr. Lewis from the advancement list? The president has complete discretion except as to time. As the court obviously knows from our brief and prior litigation, we do have a position that at the expiration of the 18-month outer limit, the president's power expired, and we believe that's consistent with prior understandings of the Navy Department. It's consistent with prior executive understandings going back to at least the administration of President Johnson.  That gets us back in a dice rut. I'm sorry. That gets us back in a dice rut. That's exactly right. But our position— It wasn't just a dice rut. It goes back to Darko at least, 1971, right? Well, Darko is under a different statute, Your Honor. Yeah, but the principle, the principle of law that's being invoked in Dice Art. They cite and rely on Darko. Your Honor, I have read— 35, 40 years of precedent. I've read the Darko case as well as the Dice Art case extensively with the attention that anyone in my position would do. I mean, your brief, quite frankly, says you believe that Dice Art, and to the extent that it's relying on Darko, they're wrongly decided. That is correct. You've pitched that to the in-bank court where you're in bankruptcy, right? Well, if I have to, but— No sense to us talking about that. That's my— So if the president has unfettered discretion here, who cares what goes on at the corrections board? I think that is—that's actually not the case because Dr. Lewis does have a right to a normal decision by a board for correction of naval records. It may be helpful if I take a second— Well, what could the board do? Oh, the board could recommend, as it has done in many cases, that a person who has been denied compliance with Section 624, the promotion and promotion delay statute, be promoted. Indeed, that's what happened in the case of Commander Edward Robinson. That was a case that— That's what happened in Dice Art, but then it was overruled by the assistant secretary. Yes, that's correct. We'll cross that bridge when we come to it, but at the moment, no one has functioned correctly on the merits of Dr. Lewis's legal claim. I'm confused. I thought you didn't want to re-argue Dice Art. I have no interest in re-arguing Dice Art, and I'd like to talk about Section 1094. That's what I thought I would do. I understand your argument about the statutory language. Yes. But we have here also a DOD regulation and a Navy regulation and a determination by an assistant secretary that all doctors, whether they're performing in an administrative capacity or providing patient care, need to have this unrestricted license. So why isn't it inappropriate for the assistant secretary to interpret the statute and the regulations to impose such a requirement? Why is that inconsistent with the statute and the regulations? The answer, Judge Dike, is that I do not agree with the premise of your question, which is that there is a DOD regulation at the time pertinent to Dr. Lewis's case that required an unrestricted license. Neither was there a Navy regulation applicable to officers who were already in the medical court that required an unrestricted license. I'm dealing with the regulations as they were in place at the time. What's the language of the DOD regulation that's being interpreted here? The language is reproduced, I believe, Your Honor, on the page in that main brief. It appears on page 4 of our main brief. This is the 1995 version, which is the version that governs. And the court will look at pages 32, 33 of the joint appendix. It simply doesn't require an unrestricted license. And the reason is that this document, Your Honor, predates the amendment in 1999. So no one intended at that time that there be a requirement for an unrestricted license. It took an act of Congress to do that. Well, wait, wait, wait. What are we dealing here? You say you got it. You're saying the DOD, the 1995 DOD regulation says it requires a license before practicing. Correct. And you say that's at page 32 of the appendix. That's 4141, where it says licensure. Unrestricted license. Okay. So what's the matter with interpreting that regulation to require an unrestricted license of all doctors? Because it says before practicing. Is there any other language in here that supports that? Yes, there is. If you look further on, you will see that there is provision for healthcare. I'm looking now, Your Honor, at 4141. I guess it's elsewhere in the same. Yeah, here it is. It's the next sentence. Healthcare practitioners who do not possess a license or other authorizing document may practice only under a written plan of supervision. And that tells me that this regulation does not prohibit a person who lacks an unrestricted license from practicing. Because it says you can do it under a written plan of supervision. In addition, it's clear from— Is there a contention that there's a written plan of supervision here? No. No, but I think it's important to look at exactly how this directive was administered at the time. And at the time, it was administered—excuse me, I'm interrupting myself, and I don't want to do that. If I could also, in response to your earlier question, refer you to Joint Appendix, page 38, paragraph E219. Which clearly introduces the notion of direct patient care, which is completely consistent with Section 1094 as it existed. Well, but it says any other person providing direct patient care. That is correct. It doesn't say doctors providing direct patient care, right? Judge Teich, you're absolutely right, and it is part of our argument in this case that that litany, that enumeration, has to be understood as an integral whole. And that the descriptive term providing direct patient care informs the meaning of the prior provisions. Okay, so maybe it's ambiguous. But why couldn't the Assistant Secretary here resolve that ambiguity by saying we interpret the DOD regulation as requiring all doctors to have unrestricted license? The answer, Judge Teich, is if I can refer you to what Dr. Bailey actually said. This appears at pages 140 and 140, 140 through 142. It is completely clear from these documents, from these two memoranda, the second one, unfortunately, is not dated, that what she was doing was purporting to implement the 1999 Statutory Amendment. There's no doubt about it. Where is that line? I'm looking at the end of the first paragraph on page 140. I'm sorry, which page? 140. 140? The first paragraph last sentence, you think? The last two sentences. This is what she is, what animated this action, this memorandum. And similarly, if you look at the undated memorandum that appears at page 142. What was Congress trying to accomplish in this Strom Thurmond National Defense Authorization Act? I think they wanted to ensure that medical personnel, physicians in particular, had licenses that were unrestricted if they were providing direct patient care. And if the court will permit me, I would like to, I hate to do this, look at the statute. Because the statute is very clear that that's what Congress was dealing with here. The statute appears on page 27. Well, one question before you go to the statute. Sure. If we conclude that the statute is ambiguous, do you agree that Dr. Bailey could properly interpret it to reach the result that she did? No, because she did not, there's an ultra-virus issue in the case that we briefed. She didn't have authority to make regulations. Well, but the act says on its face, in the case of a physician, they can't provide health care as a physician unless they have the unrestricted license. Yes. But that, Judge Ray, that is what the words say. And why can't Dr. Bailey define then what is acting as a physician? Because this statute, because Congress has left nothing ambiguous about this. Let me indicate that. What is it to act as a physician? It may not provide health care as a physician. Providing health care as a physician. Why is that so clear? When they prescribe pills, are they acting as a physician? Your Honor, all I can do, I think that— It seems to me like Dr. Bailey has some latitude to interpret this. I believe that the court never gets past Chevron Stage 1, as we indicated in our papers, if I may. The requirement of this provision deals with the provision of health care independently as a health care profession. That's what Congress said. It also refers to, in the second sentence, it refers to providing health care. In the effective—excuse me, further down, it defines in the definition of license. What is it your client was doing that you think was not providing health care? She was in an administrative position, Judge Klobuchar. She was not being a doc treating patients. Well, what was she doing in her administrative position? Typing? What was she doing? No, she was running a department, among other things. Did what she was doing administratively have anything at all to do with health? Of course. Probably making decisions that affected the types of care that people received under certain circumstances, right? Judge Rader, all I can—I'm not making up the act of Congress. Congress talks about a person providing direct patient care. Those words have some meaning. And I believe that we have every right to insist that those words be afforded the meaning that they obviously have. Where are you on this, Judge? Your Honor, I'm on page 28. This is section 1094E2. Go to the top, page 4. Yes, it's also there. Thank you. I mean, it's clear that Congress had something in mind in this. In addition, I think we pointed out that when Congress passed this, the effective date provision also said it referred to conduct or practice occurring after the effective date. I mean, this was not—I understand your point. Congress could have written a different statute. I feel I have a high ground on this because all I'm asking is that this language be given its plain meaning. I know what direct patient care is, and I think the Court—it's not a reach to say this is understandable language. Direct patient care. Thank you, Mr. Fidell. I will save just a little bit of your rebuttal time and move on to Mr. Mikkel. Thanks very much. Mr. Mikkel. Thank you, Your Honor. Mr. Fidell. May it please the Court. I'd like to take our time primarily discussing the first issue we raised in our briefs, and that is whether the trial court possessed jurisdiction to entertain this claim in the first place. We agree that if you disagree with our position, then dice are controls. But in the first instance, we'd like to talk about jurisdiction because, as this Court has instructed on many occasions, every court has the responsibility to determine if they possess jurisdiction on a certain matter. So what are you arguing? That dice are—makes completely unreviewable any promotion decision? The decisions by the President are certainly not reviewable. Certain promotion decisions we know are reviewable. This Court has held, for instance, in Lindsay and Flouella. Right. Those cases are— So why—he's saying that the Secretary's decision here to remove the name from the promotion list was based on a misconstruction of the statute. Why doesn't the Court have jurisdiction to decide that issue? Because that is the same argument that was raised and decided in Dysart. Dysart may raise the same argument, Your Honor. That is that the Navy did not follow 10 U.S.C. 624 when processing the removal from the promotion list. This Court disagreed, agreeing with the government that the President's decision, once made, that decision is nonreviewable, whether there is an error in the processing or not. The Flouella and Lindsay and those line of cases, we believe, go to other issues, i.e., towards the composition of a promotion list. So you're saying we made a mistake of affirming in Dysart a summary judgment on the administrative record. We should have dismissed that case and won a jurisdiction? No, Your Honor, we don't. And as we pointed out in our briefs, we find that the follow-on case Smith actually makes our jurisdictional argument. In the Dysart case, we believe that the Court did possess jurisdiction because Dysart was required to retire because he reached his mandatory retirement date. If he was allowed to stay, if the promotion was granted, he would have been able to continue on active duty. And that's why I thought the Smith case really outlines our argument in great detail. As Smith provided, 37 U.S.C. 204 of the Military Pay Act is a money-mandating statute, but in certain circumstances. The first one, as this Court recognized, is rare. That is when a promotion has occurred and someone's denied pay. The second one, which we see in most cases and which was the basis of the Dysart case, is when someone is involuntarily separated. And that, we believe, was the jurisdictional basis for Dysart. I'm not understanding your argument. Where does Smith say that if there's a statutory violation by a subordinate officer that that can't be reviewed? Smith doesn't say that. Smith says that under 37 U.S.C. 204, though, if there is an error but the error doesn't result in money being granted to an individual, the Court doesn't possess jurisdiction. For example, let's take the claim of a soldier who comes to the Court saying, I was denied pay when they didn't process my enlistment, my request for re-enlistment correctly or in accordance to regulations. This Court has said on numerous occasions, I think in the Austin case, that the trial court did not possess jurisdiction in that matter. Why? Because at the end of the enlistment, that's when his entitlement to pay stopped. And that's when all lawful entitlements to pay stop. So the Court could not look at the enlistment process to see, in fact, that they could mandate the enlistment of the soldier. And that's no different here. The President has made a decision removing Commander Lewis from the promotion list. Therefore, she has not been promoted. And therefore, there's no entitlement to promotion, no entitlement to pay. What happens if you view this case as a case in which there are sort of two counts in the complaint? The first is that the President lost his authority to remove her from the list for reasons that are stated in the brief A. B, second independent cause of action is that I didn't get a fair shake in front of the Corrections Board.  Well, let's assume that the only cause of action brought here was, in this case, was not the Dysart issue, not the question of whether or not the President could take Lewis off of the promotion list. But the question simply was, I went to the Corrections Board. I asked to have my records corrected, and they refused to correct it, and they were wrong. There's clearly jurisdiction over such a cause of action, right? Well, it depends on the facts of the case. If, in fact, that error caused the individual to no longer be entitled to pay, i.e., because it forced that individual out of service, yes, we would agree. The second test, as articulated in Smith, would apply, and there would be jurisdiction. But if someone came forward and said, I was denied an award because they didn't process my paperwork correctly, clearly the court would not have jurisdiction because even assuming the court decided to review the merits and agreed with the petitioner or plaintiff that they were entitled to the award. Well, what is Dr. Lewis asking for here by way of relief? Promotion by operational law. Or the delta, or— Would that entail any additional money? No, Your Honor, because Dysart says that there's no entitlement to promotion by operational law. Therefore, so even if the court agrees that she should— I really don't. I'm sorry. I don't understand what you're saying. What Dysart says is there's no automatic promotion. The fact that the time runs under the statute doesn't make this person an officer. But it also recognizes all the earlier cases that if there's an unlawful act by a subordinate, a violation of the statute, and promotion is denied because of a clear statutory violation, that there's a cause of action. We've had many cases like that. Dysart could hardly overrule those cases. But the Smith case that was subsequent to Dysart actually mentions Dysart. It says Dysart says that 37 U.S.C. 204 is a money-mandating statute. However, then the Smith court goes into discussing that just because 204 is mentioned does not mean you have to look at the circumstance of the case. And in this matter, they outline two processes that could be money-mandating. One is when you have a clear entitlement, and I think they cite it to the Skinner case, to the money requested. That's clearly not the case here since Dysart was decided. The second way that 204 could be money-mandating is if, in fact, there was a loss of pay due to some unlawful act on the part of the government.  I thought your response to my question was I don't need to worry about the Corrections Board possible mistake because what Dr. Lewis wants is promotion. And since the President has decided she can't be promoted, the case is over. Isn't that what you were saying? That was my point, but I was giving a hypothetical. Well, right, right, but for sure the matter is how do I know that the President is going to take Dr. Lewis off the promotion list if the President is presented with a recommendation or a judgment by the Corrections Board, not overruled by the Secretary, that says we believe this person should have been promoted? Take a setting in which, in Dysart, what you had was you had a final judgment on the merits by the Corrections Board in favor of Dysart overruled by the Assistant Secretary. That sort of game is over. So when the President decides whether to take somebody off the list, they know that there's been a decision by the Assistant Secretary to overrule the Corrections Board. I think what I understand Lewis to be arguing is I never got a complete and fair shake at the Corrections Board, and I would like to have that proceeding done properly so that I will find out whether the Promotions Board thinks I should have been promoted. So the Promotions Board will interpret these statutes to decide whether or not this complete licensing requirement applied to her, right? And then after she gets that full and fair hearing from the Board and a decision, the Assistant Secretary may agree with it and may overrule it, right? But in this case, putting aside the fact that we believe— Right, but I think that's what Mr. Fidele was saying was he'll take his chances. But he had—Commander Lewis did take her chances at the Board. These arguments were raised below, and the Board rejected them. Okay, but let's address the question of whether the Board was correct. I mean, he's saying that the statute was misinterpreted by Dr. Bailey, and Mr. Fidele is relying on language in the statute which he says limits the disqualification to people providing direct patient care. You argue the opposite. You say the statute is at least ambiguous and Dr. Bailey could interpret it to disqualify all physicians, whether they were an administrative physician or providing direct patient care. Right? Yes, Your Honor. Are you relying on the statute or the regulation or both? We're relying on both, Your Honor. We believe that the statute does require physicians to have a current unrestricted license, but we also believe that the DOD policy statement and regulation requires it as well, that the unrestricted—Dr. Lewis's policy— Do you think all physicians require the unrestricted license? That's the position of the Navy, absolutely, Your Honor. And the reason that is is because— A physician who is in no way, shape, or form providing any medical services whatsoever? No. Does that doctor have to have an unrestricted license? Yes, Your Honor, to be a physician in the Medical Service Corps of the Navy because the Navy requires all their physicians to possess licenses, primarily because of the nature of the business. They don't know at a moment's notice where they may be deployed, where they have to carry out these primary duties of a medical officer. More importantly, they also could be supervising subordinate medical officers. So I think the position of the Navy to require all physicians to have an unrestricted current medical license is certainly a rational one and certainly valid and certainly within the purview of Dr. Bailey to mandate, given— So you could have someone who was in the Navy who had been a doctor, Bill Frist-type person, who no longer practices medicine, who's up for chairman of the Joint Chiefs, you know, going to get a promotion to go there. And they say that person has to have a valid unrestricted medical license. If he was being promoted to the chair—well, your hypothetical— Let's assume he's being promoted from one level and gets another star, whatever, however many stars you need to be chairman of the Joint Chiefs. As long as he's a member—the Navy requires members of the Medical Service Corps, who is that corps for doctors, and therefore could subsequently be reassigned into a position of direct medical care, then that is not an invalid requirement, Your Honor. Well, the reason—let's—in your example is you would be promoting someone who happens to be a doctor into the ranks of, say, flag officer but not then into a position that is coded as a medical officer. Is there any legislative history of the statute? I am not aware of any, Your Honor. Have you looked? I have looked briefly but could not find anything. When I went up and looked, the only thing that is discussed in the Strom Thurmond Act is there was a letter by then-President Clinton explaining why he disagreed in other aspects of the National Defense Authorization Act. It did not mention this. I only have anecdotal evidence of why the law was changed, which is not part of the record. I can provide it to the court if they want. And if the court wants, I can provide subsequent briefing on this topic. Subject to your questions? Thank you, Mr. Mitchell. Fidel, your time had about expired, but let's give you two minutes. Thank you, Your Honor. I want to make it very, very clear that Secretary of the Navy Instruction 1120.12a, which is the Navy's regulation that the BCNR relied on, has no application to this case. It only involves accession of new physicians. So what? I mean, if the statute is ambiguous and Dr. Bailey was interpreting the statute and she has authority to interpret the statute, that's the end of it, right? I do not believe she has authority to interpret the statute. Why doesn't she have authority? Her authority is conferred specifically under the regulation. It is not a sweeping grant of authority. She has the right to issue certain instructions. She didn't do that. When they needed to change the regulation, Judge Dike, they changed the regulation and did it years later. What's the language that confers the authority? Let me find that for you, sir. I think that's in my ultra-fibrous. I will say that we identified this with particularity. On page 13 of our brief, Your Honor—page 25, it's right there also. At the Joint Appendix, page 34, the secretary or assistant secretary had authority to issue instructions with a capital I, which means issue the regulation. She didn't do that. As necessary to implement the policies of this directive and to exercise authority to grant waivers to this directive in exceptional circumstances, that has no application for the reasons we explained in our brief. The word instructions means that it has to be in regulatory form? Yes. That's what that means. It's a capital I. That's a term of art. DOD or Secretary of the Navy—excuse me, in her case, Department of Defense instructions. That is a term of art within this part of the forest. And what she didn't have was the power to change the regulation. When they got around to it, years after Dr. Lewis's case was concluded— Thank you, Mr. Feidel. That's what they did. Thank you very much, Your Honor.